UNITED STATES of America, Plaintiff–Appellee,

v.

Kelvin DIX; Melvin Dix, Defendants–Appellants.

No. 99–2218, 99–2224.

United States Court of Appeals, Sixth Circuit.

May 15, 2001.

Before KENNEDY, DAUGHTREY, Circuit Judges, McKEAGUE,* District Judge.

KENNEDY, Circuit Judge.

Defendants-appellants and brothers Kelvin Dix (Kelvin)[1] and Melvin Dix (Melvin) were indicted on several counts stemming from drug related activity. In accordance with Rule 11 agreements, defendants ultimately pleaded guilty to single counts of possession with intent to distribute a controlled substance. Defendant Kelvin appeals the district court's decision to enhance his sentence for possession of a firearm under U.S.S.G. § 2D1.1(b)(1).

Defendant Melvin appeals the district court's application of the quantity of drugs found in Kelvin's control to the calculation of Melvin's base offense level. Melvin also appeals the district court's enhancement of his base offense level for possession of a firearm. For the reasons stated below, we affirm the sentences imposed by the district court.

I.

Police were first alerted to defendants' drug activities by a confidential informant who told officers that defendants were storing heroin at 246 Winona, Highland Park and were storing and selling heroin at 333 Pilgrim, Highland Park. The informant told police that defendants sold the "Big Pay Back" brand of heroin and that he purchased heroin from Melvin Dix on February 11, 1997 at the 333 Pilgrim address. As part of the further police investigation, a "trash pull" turned up "Big Pay Back" narcotics packaging at both addresses. On April 17, 1997, search warrants were executed at both addresses. The search at 246 Winona (defendant Melvin's residence) uncovered 10.4 grams of heroin, narcotics paraphernalia, drug records and six firearms. The search at 333 Pilgrim (defendants' mother's home and defendant Kelvin's residence) led to the discovery of 97.8 grams of heroin in a garment bag owned by defendant Kelvin, as well as drug packaging, drug records, and $6304.00 in cash.

On February 4, 1998, defendants were arrested on federal charges. Search warrants were executed resulting in the seizure of three additional firearms at 246 Winona. Defendants were released on

---

* The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

1. Defendant Kelvin Dix apparently is also called Kevin but we will refer to him by his given name, Kelvin.

personal bond. On April 11, 1998, police officers found defendant Melvin selling drugs in his car in front of 333 Pilgrim.

The police originally charged that defendants repeatedly sold heroin, cocaine and marijuana from the front lawn of a neighbor's house on Winona. It was alleged that the resident of that house repeatedly asked defendants to stop selling drugs there and to leave the property. Defendants allegedly responded by going to the neighbor's flat brandishing firearms and threatening to burn down the residence. Later that same day the residence burned down. Although the third superceding indictment originally included count 5 (use of a firearm during drug crimes and a crime of violence. 18 U.S.C. § 924(c)) and count 6 (contempt of court for offenses committed while released on bond. 18 U.S.C. § 401(3)) relating to these alleged offenses, the government agreed, as part of the Rule 11 plea agreement, to dismiss these charges and not to attempt to enhance the sentences based on these allegations.

While providing for defendants to plead guilty to single counts of possession with intent to distribute a controlled substance, defendants' Rule 11 agreement explicitly reserved the disagreement between the parties as to the relevant quantity of drugs and as to whether a two-point enhancement for possession of a firearm would apply. The district judge determined that both defendants were responsible for over 100 grams of heroin (the combined amount found with both of them) and that both defendants were responsible for the possession of firearms. The district judge applied offense level 25 and criminal history category I to Melvin, resulting in a sentencing range of 57–71 months. The judge sentenced Melvin to 57 months in prison. The judge applied offense level 26 and criminal history category I to Kelvin, resulting in a sentencing range of 63–71

months, and sentenced Kelvin to 63 months in prison.

## II.

### A.

■ Police discovered 10.4 grams of heroin at Melvin's house, and 97.8 grams at Kelvin's house. The district court calculated both defendants' sentences based on the sum total of the heroin seized from both of them. Defendant Melvin argues that his sentence should be based only on the 10.4 grams of heroin found at his home and should not take into account the 97.8 grams found in his brother Kelvin's garment bag at Kelvin's residence.

The Sixth Circuit has explained that under the Sentencing Guidelines, "a defendant is accountable for all quantities of drugs with which he was directly involved and, in the case of joint criminal activity, all reasonably foreseeable quantities." *United States v. Ledezma*, 26 F.3d 636, 646 (6th Cir.1994). The Sentencing Guidelines provide specifically that:

> [T]he defendant is responsible for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook.

U.S.S.G. § 1B1.3, comment 2.

The district court reviewed all the evidence presented by the government and concluded that the two defendants were working jointly to sell the drugs and that there was reasonable foreseeability between them that one would be accountable for the other's drugs. In particular, the district court relied on the confidential informant's description of the defendants' activities, evidence that Melvin conducted at least one drug sale out of Kelvin's residence at 333 Pilgrim, evidence that they

were both selling the same brand of drug, and the existence of wrappers from that brand found at both locations. In addition, mail addressed to Melvin at his home (246 Winona) was discovered at Kelvin's residence (333 Pilgrim) with drug calculations on it. Based on this evidence, the district court did not err in concluding that defendants were involved in a jointly undertaken criminal activity and that it was reasonably foreseeable to each that he would be accountable for the other's drugs. Thus, we conclude that the district court was not clearly erroneous in calculating defendant Melvin's sentence based on over 100 grams of heroin. We affirm the judgment of the district court as to this claim.

### B.

Defendant Melvin also appeals the district court's sentence enhancement for possession of a firearm. U.S. Sentencing Guideline § 2D1.1(b)(1) explicitly provides that "[i]f a dangerous weapon (including a firearm) was possessed, increase [the sentence] by 2 levels." Defendant Melvin first argues that, despite the fact that the police discovered six firearms at Melvin's house when they seized the 10.4 grams of heroin, application of this enhancement is inappropriate because the parties' Rule 11 agreement precluded such an enhancement. In particular, defendant relies on the language in the Rule 11 agreement which provides that, "[t]he government agrees not to attempt to enhance the defendant's guidelines based on the allegations in the firearms and contempt of court counts." (J.A. 160.) The agreement also states earlier, however, that "[a]s to a 2–point Firearms enhancement, the defendant argues that it does not apply, while the government argues that it does apply." In fact, the Rule 11 agreement left the question of the two point sentencing enhancement for gun possession for the judge to decide. The agreement not to enhance "based on the allegations in the

firearms and contempt of court counts," referred to the original counts five and six of the third superceding indictment involving defendants' alleged drug sales on their neighbor's lawn and the alleged threats and arson charges which were dismissed by the government as part of the plea agreement. Thus, we reject defendant's argument that the plea agreement precluded application of the two point sentence enhancement.

■ Defendant Melvin also alleges that the enhancement was inappropriate because the government demonstrated no nexus between the firearms and the drugs. A district court's finding that a defendant possessed a firearm during a drug crime is a factual finding that we review for clear error. *United States v. Pruitt*, 156 F.3d 638, 649 (6th Cir.1998). The *Pruitt* court further explained that:

> To apply the enhancement under section 2D1.1(b)(1), the government must establish that (1) the defendant actually or constructively "possessed" the weapon, and (2) such possession was during the commission of the offense. Constructive possession of an item is the ownership, or dominion or control over the item itself, or dominion over the premises where the item is located. Once it is established that a defendant was in possession of a weapon during the commission of an offense, a presumption arises that such possession was connected to the offense. The burden then shifts to the defendant to show that it is clearly improbable that the weapon was connected to the offense.

*Id.* (citations omitted). U.S. Sentencing Guideline § 2D1.1(b)(1), comment 3 provides that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." The guns were discovered in defendant Melvin's home at the same time that the drugs

were discovered there. Defendant has offered no evidence to suggest that it is improbable that the weapon was connected to the offense. Thus, the fact that the guns and drugs were found in the same residence at the same time is sufficient to justify application of the enhancement to Melvin. We affirm Melvin's sentence enhancement for possession of a firearm in connection with a drug crime.

### C.

Defendant Kelvin Dix raises one claim on appeal: he appeals the district court's application of the two point sentence enhancement for possession of a firearm based on Melvin's possession of firearms. In short, Kelvin appeals the district court's ruling that, as a result of his joint enterprise with co-defendant Melvin, he should reasonably have foreseen that Melvin was in possession of firearms. Regardless of whether the district court erred in applying the sentence enhancement, however, we conclude that any resulting error was harmless and that a remand is, therefore, unnecessary.

The district court ultimately sentenced defendant Kelvin to 63 months in prison. The sentencing range after the two point enhancement was 63–71 months. The sentencing range without the two point enhancement would have been 51–63 months. Thus, as an initial matter, the 63 month sentence fell permissibly within either range.

The U.S. Supreme Court has held that a remand is not necessary every time a sentencing court misapplies a provision of the guidelines. Instead, the Court has explained that in determining whether a remand is required, "a court of appeals must decide whether the district court would have imposed the same sentence had it not relied upon the invalid factor or factors." *Williams v. United States*, 503 U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992). Similarly, the Sixth Circuit has held that "[r]emand is appropriate unless the appellate court is convinced that the trial court would have imposed the same sentence absent [its] misinterpretation of the guideline." *United States v. Vandeberg*, 201 F.3d 805, 812 (6th Cir.2000).

In the present case, before imposing the 63 month sentence, the district judge acknowledged that the sentence fell permissibly within either guideline range and stated that regardless of which range applied, she felt that 63 months was the appropriate sentence. (J.A. 136.) The district judge indicated that she would have applied the same sentence absent the application of the two point enhancement. As a result, we need not remand this case and, without ruling on the validity of the district court's application of the two point sentence enhancement, we affirm the sentence imposed by the district court.

### III.

For the foregoing reasons, we affirm the sentences of both defendants.