**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**George M. PARROTT, Defendant–Appellant.**

**No. 97–6035.**

United States Court of Appeals,
Sixth Circuit.

Argued April 30, 1998.

Decided July 6, 1998.

Robert C. Watson, Asst. U.S. Attorney (argued and briefed), Office of U.S. Atty., Nashville, TN, Scott W. Putney (briefed), U.S. Dept. of Justice, Civil Tax Division, Washington, DC, for Plaintiff–Appellee.

Ernest W. Williams (argued and briefed), Franklin, TN, J. Russell Heldman (briefed), Williams and Heldman, Franklin, TN, for Defendant–Appellant.

Before: MERRITT, NORRIS, and WALLACE,* Circuit Judges.

MERRITT, J., delivered the opinion of the court, in which NORRIS, J., joined. WALLACE, J. (pp. 636–638), delivered a separate opinion concurring in part and dissenting in part.

---

* The Honorable J. Clifford Wallace, Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

## OPINION

MERRITT, Circuit Judge.

George M. Parrott appeals the sentence imposed following his guilty plea to one count of filing a false tax return in violation of 26 U.S.C. § 7206(1). Parrott argues that the District Court erred in determining his base offense level based upon a tax loss of more than $70,000. He also contends that the District Court erred in adjusting his offense level upward by two points for failure to report a source of income exceeding $10,000 from criminal activity and in making another two-level enhancement for obstruction of justice. The District Court properly determined the amount of the tax loss, and we reject Parrott's appeal with respect to that question. The court failed, however, to make specific, independent factual findings to support the two upward adjustments as required by Rule 32(c)(1) of the Federal Rules of Criminal Procedure. The District Court also misapplied the guideline for obstruction of justice. We conclude that the court's error with regard to the criminal activity enhancement was harmless, but we cannot so conclude with respect to the enhancement for obstruction of justice. We therefore vacate Parrott's sentence and remand for resentencing.

In December 1996, a grand jury indicted Parrott for filing false tax returns in 1988, 1989, and 1990; for submitting seven false documents to the I.R.S. during examination of these returns; and for submitting false documents to a bank in connection with loan applications. Parrott agreed in April 1997 to plead guilty to filing a false tax return for the year 1990 in exchange for dismissal of the remaining counts of the indictment. In the plea agreement the parties stipulated that Parrott caused a tax loss to the government of between $70,000 and $120,000 in the years 1988 through 1990.

At the plea hearing, Special Agent Gary Sinclair testified as to the relevant facts. In early 1988, John and Alice Lindahl entrusted Parrott, their accountant, with approximately $282,000 to invest and manage on their behalf. Parrott was to prepare periodic financial statements on their investments and to reinvest their earnings. Without the Lin-

dahl's knowledge, Parrott transferred their funds into his personal and business accounts. Parrott provided the Lindahls with a financial statement at the end of 1988 falsely indicating that he had used their money to purchase certain bonds. Parrott misappropriated $169,716 from the Lindahls' accounts in 1990 and failed to report this amount on his tax return. He also failed to report income he received in 1990 from a corporation known as Brindan Music, Inc. Parrott's total tax deficiency for the year 1990 amounted to $48,266. During the hearing, Parrott stated that he believed Sinclair's testimony was truthful. Plea Tr. at 21, J.A. at 99.

In July 1997, District Judge Todd J. Campbell sentenced Parrott. He used the 1990 Guidelines Manual to avoid violation of the Ex Post Facto Clause. See U.S.S.G. § 1B1.11 (1995). Based on the stipulation in the plea agreement, Judge Campbell found that the total tax loss in the case was between $70,000 and $120,000. He determined that the base offense level for a crime resulting in a tax loss in this range was twelve. U.S.S.G. § 2T4.1 (1990). Adopting the factual statement contained in the presentence report, he added two points for failure to report a source of income exceeding $10,000 from criminal activity pursuant to § 2T1.3(b)(1) and added another two points for obstruction of justice pursuant to § 3C1.1. Judge Campbell then made a two-level downward adjustment for acceptance of responsibility. He denied Parrott's motion for a two-level reduction in offense level for diminished capacity pursuant to § 5K2.13, and he also denied the government's motion for an upward adjustment for use of sophisticated means under § 2T1.3(b)(2). Based on an adjusted offense level of fourteen and a category-I criminal history, Judge Campbell sentenced Parrott to a term of imprisonment on the low end of the applicable range of fifteen to twenty-one months.

Parrott first contends that the District Court erred in determining his base offense level based on a tax loss of more than $70,000. Although he had stipulated in the plea agreement that his conduct caused a

loss exceeding $70,000, he now maintains that the actual loss in the case was only $68,000 and that his base offense level therefore should have been one level lower. Parrott bases this argument on amended tax returns for the years 1988 through 1990 that he submitted to the District Court on the day of his sentencing hearing. These returns claimed deductions for certain farm losses that Parrott did not claim in his original returns. Although the prosecution provided Parrott with the documents it used to compute the tax loss more than seven months before the sentencing hearing, he waited until the day of his sentencing to submit amended returns reflecting the alleged farm losses and to argue for a tax loss of less than $70,000. The District Court refused to consider the new deductions, holding Parrott to his affirmation under oath during the plea hearing that the tax loss was greater than $70,000. Sentencing Tr. at 77–80, J.A. at 333–36.

Judge Campbell properly refused to consider Parrott's alleged farm loss deductions in determining the tax loss. Under § 2T1.3, the duration of the sentence is based on the "magnitude of the false statements," not necessarily the net of concealed income less unclaimed deductions. *See* U.S.S.G. § 2T1.3 (1990), comment. (backg'd.). Applying the guideline formula in this case would place the tax loss within the $70,000–$120,000 range. Parrott's gross income for the years 1988 through 1990 exceeded the amount he reported by at least $282,000—the sum he admitted to receiving from the Lindahls during that period. J.A. at 124. Using the guideline rate of twenty-eight percent, the tax loss on this amount would be $78,960. Thus, there is a factual basis for the stipulated amount. Under the circumstances, Judge Campbell's refusal to reduce the stipulated tax loss based on Parrott's alleged farm losses was proper and his finding that the tax loss fell within in the $70,000–$120,000 range was not clearly erroneous.

Parrott next argues that the District Court erred by making an upward adjustment under § 2T1.3(b)(1), which instructs the sentencing court to increase by two levels "[i]f the defendant failed to report or to correctly identify the source of income exceeding $10,-000 in any year from criminal activity." U.S.S.G. § 2T1.3(b)(1) (1990). The relevant application note defines "criminal activity" as "conduct constituting a criminal offense under federal, state, or local law." *Id.*, comment. (n. 1). The District Court concluded that the government had proved by a preponderance of the evidence that Parrott's conduct violated Tennessee's statute regarding theft of property, which provides that "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39–14–103.

■ Parrott offers two theories for reversing the District Court's upward adjustment under § 2T1.3. First, he contends that the 1990 version of § 2T1.3(b)(1) should not have applied in his case. He observes that until November 1, 1990, "criminal activity" under § 2T1.3(b)(1) was limited to "racketeering activity as defined in 18 U.S.C. § 1961." Since Parrott's alleged "criminal activity" began before November 1, 1990, he contends that application of the broader version of § 2T1.3 that went into effect on that date would violate the Ex Post Facto Clause. This argument must fail. Parrott's offense of conviction was predicated on conduct that occurred after November 1, 1990: He filed the false tax return in question on October 15, 1991. Thus, even if Parrott "misappropriated" all the funds he failed to declare on his 1990 tax return before November of 1990, there is no *ex post facto* problem in this case. *See United States v. Pierce,* 17 F.3d 146, 150 (6th Cir.1994) ("[W]here a conviction is predicated upon acts occurring after the Guidelines' effective date, enhancing a base offense level based upon relevant conduct that occurred before the Guidelines were enacted does not violate the *ex post facto* clause.").

■ Parrott's second theory is that the government failed to offer proof sufficient to support the District Court's finding that he engaged in "criminal activity" and that the District Court erred by relying solely on the presentence report as the factual basis for the enhancement. As Parrott observes, Rule 32(c)(1) of the Federal Rules of Criminal

Procedure requires the sentencing court to make either a factual finding for each contested factor in the presentence report, or to make a determination that no finding is necessary because the controverted matter will not be taken into account for sentencing.[1] After Parrott's sentencing hearing, our Court made it clear that Rule 32(c)(1) "prohibits a court faced with a dispute over sentencing factors from adopting the factual findings of the presentence report without making factual determinations of its own." *United States v. Monus*, 128 F.3d 376, 396 (6th Cir.1997); *see also United States v. Tackett*, 113 F.3d 603, 613–14 (6th Cir.1997) (observing that this Court requires "literal compliance" with Rule 32(c)(1) in order to ensure that defendants are sentenced on the basis of accurate information and to provide a clear record for review), *cert. denied*, —— U.S. ——, 118 S.Ct. 879, 139 L.Ed.2d 868 (1998). The primary purpose for this rule is to ensure that sentencing is based on reliable facts found by the court itself after deliberation, not on the delegation of the fact-finding process to the probation officer or the prosecution.

In his written objections to the presentence report, Parrott contended generally that there was no evidence to support the § 2T1.3(b)(1) enhancement because "there has been no finding by any court of competent jurisdiction that a crime has occurred, nor has a charge or indictment of a crime been alleged." Def.'s Position with Respect to Sentencing Factors at 3, J.A. at 117. The government filed a response contending that Parrott's admission during the plea hearing that he had misappropriated $282,000 from the Lindahls and failed to report the amount on his 1990 tax return was sufficient to establish theft of property under Tennessee law. Gov't's Resp. to Def.'s Position with Respect to Sentencing Factors at 2–3, J.A. at 143–44.

At sentencing the District Court considered and rejected Parrott's general objection to the enhancement recommended by paragraph 28 of the presentence report. The court asserted that that the government had proved by a preponderance of the evidence that Parrott's conduct violated Tennessee's statute for theft of property. Judge Campbell did not make independent findings with respect to the elements of the offense. Instead, he relied solely on the factual statements contained in the presentence report in finding that Parrott's conduct warranted enhancement of his sentence on this basis: "I am basing my ruling on the presentence report, and those are the facts that I am considering. I think the facts in the presentence report reflect a violation of theft of property which is T.C.A. 39–14–103." Sentencing Tr. at 62–63, J.A. at 318–319.

On appeal, Parrott continues to assert that the evidence is insufficient to prove that he engaged in criminal activity, but he has refined his argument somewhat. He now contends that the court's failure to make a particularized, independent finding with respect to criminal intent requires remand for resentencing. Parrott suggests that because he intended to repay the money he took from the Lindahls, he did not have the intent necessary for theft of property. He concedes only that he breached his fiduciary duty, an act that does not constitute criminal activity.

█ In light of the objections made by Parrott to the presentence report before and during the sentencing hearing, the District Court did not fully comply with Rule 32(c)(1) when it simply adopted the report in support of the § 2T1.3(b)(1) enhancement. It is clear that Judge Campbell could have made more detailed independent factual findings to sup-

---

1. The rule reads as follows:

    At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence, and must rule on any unresolved objections to the presentence report. The court may, in its discretion, permit the parties to introduce testimony or other evidence on the objections. *For each matter controverted, the court must make* *either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing. A written record of these findings and determinations must be appended to any copy of the presentence report made available to the Bureau of Prisons.*
    Fed. R.Crim. P 32(c)(1) (formerly Rule 32(c)(3)(D)) (emphasis added).

port the enhancement. Nevertheless, we are convinced that his error in this regard was harmless. The challenged portion of the presentence report contains only a single statement of fact: "Mr. Parrott misappropriated funds totaling approximately $282,000 which were entrusted to him. The defendant then failed to include this money as income on his 1988 through 1990 federal income tax returns." Presentence Rep. ¶ 28, J.A. at 235. This statement of the facts is entirely consistent with Agent Sinclair's testimony at the plea hearing—expressly adopted by Parrott—that Parrott misappropriated about $169,000 from the Lindahls during 1990 and failed to report that amount on his tax return. It is also consistent with Parrott's plea of guilty to filing a false tax return for the year 1990, which constitutes an admission that he did not believe the money he took from the Lindahls constituted a loan. If the money were truly a loan, Parrott would have been under no duty to report it as income, and he would not be guilty of the predicate offense of filing a false tax return. Parrott's more refined argument on appeal regarding intent cannot help him. Even if he took the money from the Lindahls intending to give it back, as he now suggests, his admissions would be more than sufficient to establish that he committed theft of property under Tennessee law. *See* T.C.A. § 39–11–106(a)(8) ("deprive" means to withhold property from the owner "for such a period of time as to substantially diminish the value or enjoyment of the property to the owner" or to "[d]ispose of property or use ... under circumstances that make its restoration unlikely").

In sum, although the District Court technically erred by adopting the challenged paragraph of the presentence report in support of the § 2T1.3(b)(1) enhancement, the error was harmless in light of Parrott's own admissions at the plea hearing. These admissions establish conclusively that he committed theft of property under Tennessee law. Although our recent opinions in *Tackett* and *Monus,* discussed above, may suggest that any technical violation of Rule 32(c)(1) requires remand for resentencing, we decline to adopt such a broad interpretation. These cases do nothing to displace our obligation under 28

U.S.C. § 2111 and Rule 52(a) of the Federal Rules of Criminal Procedure to disregard errors that do not affect substantial rights. In the present case it is clear that the District Court's failure to comply with Rule 32(c)(1) had no effect on the defendant's sentence and therefore constituted harmless error.

Parrott also contends that the District Court erred by making an upward adjustment under § 3C1.1 for obstruction of justice. Judge Campbell made this two-level enhancement because Parrott submitted to Special Agent Sinclair certain "deposit analysis summaries" that contained false entries. On appeal, Parrott concedes that the documents in question were false in the sense that they listed the funds he had taken from the Lindahls' accounts as loans instead of as income. Parrott argues that the prosecution failed to offer evidence sufficient to prove by a preponderance of the evidence that his conduct actually impeded the investigation. He also contends that District Court violated Rule 32(c)(1) by failing to make an independent finding that he *willfully* obstructed justice. In response, the prosecution contends that merely attempting to obstruct justice is sufficient to warrant enhancement under § 3C1.1 and that Parrott's submission of false documents alone satisfies the requirements of the guideline.

█ We agree with the prosecution that attempting to impede a criminal investigation by submitting false documents warrants enhancement, whether or not the investigation is actually impeded. The guideline explicitly states that enhancement is required if the "defendant willfully obstructed or impeded, *or attempted to obstruct or impede,* the administration of justice." U.S.S.G. § 3C1.1 (1990) (emphasis added). We therefore reject Parrott's argument that because his conduct did not actually impede the government's investigation, the obstruction of justice enhancement was unwarranted in this case.

█ Nevertheless, we agree with Parrott's claim that in light of his objections to the presentence report, the District Court erred by failing to make independent factual find-

ings sufficient to support the obstruction enhancement, as required by Rule 32(c)(1). Parrott contended—albeit inarticulately—that he submitted the documents not in an effort to impede the investigation, but in order to cooperate. Sentencing Tr. at 66–68, J.A. at 322–24. Judge Campbell did not make a specific finding that Parrott submitted the false documents for the purpose of interfering with the investigation, apparently because he felt that no finding of intent was necessary under the circumstances of this case. He accepted the government's argument, based on application note 3(c) to § 3C1.1, that the mere fact that Parrott submitted the "deposit analysis summaries" was sufficient to support the enhancement. *See* Sentencing Tr. at 71–73, J.A. at 327–29; Gov't's Resp. to Def.'s Position with Respect to Sentencing Factors at 4, J.A. at 145.

We reject this interpretation of the guideline. On its face, § 3C1.1 requires the government to prove by a preponderance of the evidence that the defendant *"willfully* obstructed or impeded, or *attempted* to obstruct or impede, the administration of justice during the investigation." U.S.S.G. § 3C1.1 (emphasis added). While application note 3(c) contemplates enhancement for "producing ... a false, altered, or counterfeit document or record during an official investigation," it does nothing to displace the intent requirement found in the text of the guideline itself. Pursuant to the plain language of the guideline, the government must convince the court that the defendant wilfully obstructed or attempted to obstruct justice. *See United States v. Perry,* 991 F.2d 304, 312 (6th Cir.1993) (conduct "does not come within [§ 3C1.1's] purview without at least a minimal showing by the government that it was done with the purpose of interfering with investigation or prosecution of the crime").

In light of Parrott's objections before and during the sentencing hearing, Judge Campbell erred by failing to make an explicit finding on the question of Parrott's purpose for submitting the documents to investigators. The presentence report adopted by Judge Campbell in support of the enhancement, is silent on the issue. The government failed to present any evidence regarding Par-

rott's intent either before or during the sentencing hearing, apparently because of its erroneous interpretation of the guideline. Although the record may contain circumstantial evidence suggesting that Parrott submitted the documents for the purpose of impeding the government's investigation of the conduct underlying his conviction for the predicate offense, the record before us does not foreclose a finding to the contrary. The proof does not preclude the possibility that Parrott submitted the documents in an effort to cooperate with investigators. The documents in question do not appear in the record before us, but they apparently provided evidence tending to show that Parrott committed the underlying offense. Parrott apparently turned the documents over in response to a request for all of his financial records for the relevant period, but the precise circumstances of their submission remains unclear.

█ Given the gaps in the record surrounding the documents and their submission, we cannot conclude that the District Court's error was harmless. Had Judge Campbell correctly interpreted the obstruction guideline and developed the evidence on the issue, he might have found that Parrott's purpose for submitting the documents to investigators was innocent and thus did not justify the enhancement. If that had been the case, Parrott's offense level would have been twelve rather than fourteen, and Judge Campbell could have imposed a shorter term of imprisonment reduced further by a period of home confinement, a possibility he explicitly entertained but ruled out because of his error. *See* Sentencing Tr. at 86, J.A. at 342 (Judge Campbell discussing U.S.S.G. § 5C1.1(d) (1990), which contemplates "split sentences" where the minimum term of imprisonment in the applicable range is less than twelve months). Because we cannot conclude that Judge Campbell would have imposed the same sentence absent his misinterpretation of the guideline, we vacate the enhancement for obstruction of justice and remand for reconsideration. 18 U.S.C. § 3742(f)(1) (requiring remand where sentence imposed "as a result" of misapplication of guidelines); *see also Williams v. United States,* 503 U.S. 193, 203, 112 S.Ct. 1112, 117

L.Ed.2d 341 (1992) (remand appropriate under § 3742(f)(1) unless party defending sentence convinces court that district court would have imposed same sentence absent misapplication of guideline).

Remand is also necessary in this case to fulfill Rule 32(c)(1)'s requirement that the court respond to each of the defendant's allegations of factual inaccuracy in the sentencing report by making a written finding or a determination that a such a finding is unnecessary and by attaching a record of these findings and determinations to any copy of the presentence report made available to the Bureau of Prisons. Fed. R.Crim.P. 32(c)(1); *see also Monus,* 128 F.3d at 397. Our review of the record indicates that the District Court failed to respond to Parrott's objections to the presentence report in writing as required by the rule. Instead, the court merely "adopt[ed] the factual findings and guideline application in the presentence report." Judgment at 6, J.A. at 223. Because the sentencing judge failed to make written determinations and attach them to the presentence report, there is no record of the disposition of Parrott's allegations. Requiring the judge to make written findings and attach them to the sentencing report will further the Rule's purpose of providing the Bureau of Prisons with a complete record to use in their decision-making process. *See* Fed.R.Crim.P. 32(c)(1) & advisory committee's note to former Rule 32(c)(3)(D) (1983) (noting that Bureau of Prisons places great reliance on factual assertions found in presentence report when making critical determinations relating to custody).

For the reasons stated, we vacate Parrott's sentence and remand for resentencing in accordance with this opinion. The defendant should be subject to release on bail while awaiting resentencing. We leave the question of the conditions of release to the District Court.

WALLACE, Circuit Judge, concurring and dissenting.

I concur with the majority's discussion of the amount of the tax loss and concur in the result only on the "criminal activity" sentence enhancement, but I must respectfully dissent on the reversal of the sentence enhancement for obstruction of justice.

I

I agree with the majority that any error under Rule 32 in the context of the "criminal activity" enhancement is harmless. I disagree with the majority that there is any error at all.

The majority correctly states that Parrott objected to an enhancement pursuant to section 2T1.3(b)(1) because "there has been no finding by any court of competent jurisdiction that a crime has occurred, nor has a charge or indictment of a crime been alleged." The district court responded to that objection and made a specific finding that Parrott violated Tennessee Code Annotated § 39–14–103.

The majority now holds that this finding was insufficient because, *on appeal,* Parrott argues that he lacked intent. Parrott did not challenge the finding or enhancement on this basis in the district court. If the majority is correct, to avoid reversal the district court would have to make findings on every subissue, whether or not it was specifically raised by the defendant. This cannot be the law. I would hold the intent issue was waived by failing to raise it before the district court.

The majority also faults the district court for "simply adopt[ing]" the presentence report. It is true that "a court faced with a dispute over sentencing factors [is prohibited] from adopting the factual findings of the presentence report without making factual determinations of its own." *United States v. Monus,* 128 F.3d 376, 396 (6th Cir.1997). Unlike the district court in *Monus,* which failed to address "the defendant's specific factual objections to the methods of calculation" in the presentence report, *id.* at 397, the district court here directly addressed and made findings on the objections raised by the defendant. It did not make a blanket acceptance of all the findings of the presentence report, but specifically addressed all controverted issues.

The majority faults the district court for not making "independent" findings. Independent factual findings, however, only mean

findings based on an independent *review* of the evidence, not findings based on evidence independent from the presentence report. If a court could never rely on the evidence in the presentence report to make factual findings, then the court would always have to have an evidentiary hearing whenever facts are challenged. Rule 32, however, makes evidentiary hearings on objections to the presentence report discretionary: "The court may, in its discretion, permit the parties to introduce testimony or other evidence on the objections." Fed.R.Crim.P. 32(c)(1); *see also* Fed.R.Crim.P. 32(b)(6)(D) ("Except for any unresolved objection under subdivision (b)(6)(B), the court may, at the hearing, accept the presentence report as its findings of fact.").

This court demands "literal compliance" with Rule 32(c)(1), but such "literal compliance" only requires that the district court examine the evidence on controverted issues and "make either a finding on the allegation or a determination that no finding is necessary." *United States v. Tackett*, 113 F.3d 603, 613 (6th Cir.1997) (quoting Fed. R.Crim.P. 32(c)(1)), *cert. denied*, —— U.S. ——, 118 S.Ct. 879, 139 L.Ed.2d 868 (1998). The district court here made a finding on the controverted matter—this should satisfy even the most literal reading of Rule 32(c)(1).

## II

The majority's analysis of the obstruction of justice enhancement fails for the same reasons discussed in reference to the "criminal activity" enhancement. But here, the majority's mistake is compounded because the majority holds there was no harmless error. I conclude that not only is the majority's interpretation of the "error" incorrect, but any "error" on the obstruction of justice enhancement is harmless for the same reasons as the "error" on the "criminal activity" enhancement is harmless.

Parrott objected to a proposed enhancement under U.S.S.G. § 3C1.1 for obstruction of justice because, according to Parrott, production of old false documentation is insufficient; that is, new false documentation is required to create an obstruction of justice. At the sentencing hearing, Parrott's counsel also attempted to argue that the documents submitted were not false. The district court disagreed and made findings that the documents submitted were false. This was his objection before the district court. The district court was not requested to make any other finding.

The majority assert that Parrott "inarticulately" raised another argument: "that he submitted the documents not in an effort to impede the investigation, but in order to cooperate." I do not believe this argument was raised. The majority cites three pages of the trial transcript, but that oblique colloquy ends with the following:

THE COURT: In your view it is not false, whatever was handed over was not false?

I want to make sure I understand your argument.

MR. WILLIAMS: That's correct. It is always our position that we didn't give them false documents.

Nor have I found where the precise issue of an effort to cooperate was raised in Parrott's opening brief to this court. His argument is difficult to follow because he mixes the criminal activity issue with the obstruction of justice issue. But that aside, he still argues the documents were not false and that having submitted the same documents earlier to a civil investigation, resubmitting them now cannot be a willful obstruction.

Thus, the district court was not required to guess what additional arguments Parrott would articulate on appeal and to make findings on those issues. Rule 32(c)(1) only requires findings on controverted matters. Nor are we required to review arguments not raised in his opening brief.

Even if the district court did err in not making the clairvoyant findings on intent the majority opinion would require, such an error would be harmless here. In his plea hearing, Parrott agreed with Agent Sinclair's statement that Parrott misappropriated funds. Establishing misappropriation was a vital part of the plea hearing—if the money had merely been a loan, as Parrott suggested in his sentencing hearing that he could show "if the court let [him] withdraw his plea," then there would have been no crime in failing to pay taxes on the "borrowed" money. But Parrott agreed that he misappropriated funds and evaded federal income taxes and is now bound by his plea agreement.

638

Because Parrott was misappropriating money from the Lindahls, not borrowing it, Parrott must have known that the deposit analysis summaries he provided, which, according to Parrott, listed the money taken from the Lindahls' accounts as loans, were false. Submitting documents one knows are false to a government investigation should easily qualify as "willfully . . . attempt[ing] to obstruct or impede[ ] the administration of justice." U.S.S.G. § 3C1.1.

The majority suggests that "[t]he proof does not preclude the possibility that Parrott submitted the documents in an effort to cooperate with investigators." Providing documents one knows to be false and to cover up a crime is, in my judgment, a strange way to "cooperate" with an investigation. I believe that Parrott's actions provide "at least a minimal showing by the government" that Parrott's production of documents "was done with the purpose of interfering with investigation or prosecution of the crime." *United States v. Perry*, 991 F.2d 304, 312 (6th Cir. 1993); *see* U.S.S.G. § 3C1.1, cmt. 3(c) (applying the sentence enhancement to "producing or attempting to produce a false . . . document"). Any error, and there is none, was harmless.

I would affirm.