**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Servando GALVAN–GUAJARDO,
Defendant—Appellant.**

**No. 02–6297.**

United States Court of Appeals,
Sixth Circuit.

Oct. 14, 2003.

James W. Powell, Asst. U.S. Attorney U.S. Attorney's Office, Jackson, TN, for Plaintiff–Appellee.

M. Dianne Smothers, Asst. FP Defender, Office of the Federal Public Defender, Memphis, TN, for Defendant–Appellant.

Before: SUHRHEINRICH, COLE and ROGERS, Circuit Judges.

**OPINION**

ROGERS, Circuit Judge.

Servando Galvan–Guajardo appeals the sentence imposed by the district court for a violation of 8 U.S.C. § 1326(a), which makes it unlawful for any deported alien to enter, to attempt to enter, or to be found in the United States without proper authorization. The crux of Galvan–Guajardo's appeal is that, in fixing the sentence, the district court violated U.S.S.G. § 4A1.2(e)(1) when, in determining Galvan–Guajardo's criminal history score, it impermissibly considered prior convictions occurring more than fifteen years prior to the commencement of the offense. The

parties differ on the question of when a violation of § 1326 should be deemed to have commenced. We affirm because, even accepting Galvan–Guajardo's argument, there would be no change in the applicable guideline range. Moreover, even if acceptance of Galvan–Guajardo's argument could be deemed to have affected his sentence, the Government is correct in its contention that, for purposes of U.S.S.G. § 4A1.2(e)(1), the violation of § 1326(a) commenced when Galvan–Guajardo entered the United States in violation of the deportation order, and not when immigration officials subsequently "found" him.

## I. BACKGROUND

On June 5, 2002, Galvan–Guajardo pleaded guilty to a one-count indictment after being found in the United States in violation of a deportation order. This was not his first encounter with the criminal justice system. Galvan–Guajardo had at least ten prior convictions dating back to 1983, ranging from simple assault to aggravated burglary to distribution of heroin. Prior to the sentencing hearing, the probation officer prepared a pre-sentence investigation report ("PSR") which detailed each of these prior convictions, including five convictions occurring between 1983 and 1986. For each of the convictions, the probation officer assigned a point value in accordance with U.S.S.G. § 4A1.1, which sets forth the procedure for calculating an offender's criminal history score. The five 1983–1986 convictions combined were worth seven criminal history points; Galvan–Guajardo's total criminal history score totaled 26 criminal history points. The sentencing guidelines classify an offender in one of six criminal history categories based upon this criminal history score; Galvan–Guajardo fell into category VI because he had a criminal history score higher than 13.

Galvan–Guajardo objected to the inclusion of the five 1983–1986 convictions in the calculation of his criminal history. He pointed out that U.S.S.G. § 4A1.2(e)(1) limits the court to considering any sentences of imprisonment imposed within fifteen years of the "commencement of the instant offense." Galvan–Guajardo argued that the offense of "being found in" the United States began on November 5, 2001, when he was transferred from state authorities to federal immigration officials. Galvan–Guajardo asserted that the court could not consider any prior convictions occurring before November 5, 1986, because those convictions would fall outside the fifteen year time restriction.

The district court, unpersuaded by Galvan–Guajardo's contention, ruled that, for sentencing purposes, the offense began when the defendant last entered the country illegally. There was some question as to whether Galvan–Guajardo's last illegal reentry occurred in 1992 or in 1995, but applying 1995 as the date the offense commenced, the court found that it could properly consider all of the prior convictions listed in the PSR. In applying the guidelines, the district court calculated the offense level to be 17, determined that Galvan–Guajardo fit in criminal history category VI (based upon his criminal history score of 26), determined the guideline range to be 51–63 months, and sentenced him to 63 months imprisonment. If the 1983–1986 convictions were not considered toward Galvan–Guajardo's criminal history score, that score would have been reduced to 19, but he would nonetheless remain in criminal history category VI and his guideline range of 51–63 months would not change.

## II. DISCUSSION

█ There appears to be no legal basis for us to review the district court's applica-

tion of the sentencing guidelines in this case. A defendant may only appeal a sentence that:

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines; or

(3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or

(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

18 U.S.C. § 3742(a). It is true that we have jurisdiction to review a sentence if the defendant can identify a "specific legal error" in the formulation of his sentence, where correcting the error might affect the guideline range, even when the sentence imposed was within the guideline range advocated by the defendant. *See United States v. Lavoie*, 19 F.3d 1102, 1104 (6th Cir.1994). Where, however, a defendant challenges a sentence within a guideline range correctly ascertained by the district court, and where there is no contention that the sentence was imposed based upon a consideration "prohibited by law" (see U.S.S.G. § 1B1.4), there is no basis for appeal of the sentence. *See United States v. Lovins*, 993 F.2d 1244, 1245 (6th Cir.1993).

Galvan–Guajardo asserts a specific legal error in this case, specifically, that the district court incorrectly applied § 1326(a) and considered prior convictions that should have been excluded from consider-

ation under the time restriction of U.S.S.G. § 4A1.2(e)(1). But the error, if error it was, did not lead to an incorrect determination of a guideline range, and thus as a legal matter did not affect "the formulation of his sentence."

The relief Galvan–Guajardo seeks can have no impact on his sentence because such a reduction cannot move Galvan–Guajardo out of category VI. Category VI encompasses offenders with criminal history scores of 13 and higher. Therefore, a reduction in criminal history score from 26 to 19 would have no effect on the correct determination of the guideline range. If we were to remand for resentencing with instructions to the district court to disregard the earlier convictions and reduce Galvan–Guajardo's criminal history score commensurately, the district court would be faced with the identical guideline range. Only its (unreviewable) exercise of discretion within that range might change. But in determining where to sentence within the guideline range, the court may properly take into account prior convictions that cannot be used to determine the range in the first place. *See* U.S.S.G. § 1B1.4 ("In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."); *see also* U.S.S.G. § 4A1.2, cmt. n. 8 (providing that the district court may consider convictions falling outside the applicable time period in determining whether to depart upward).

Galvan–Guajardo asserts that this alleged legal error may have affected the formulation of his sentence because the district court may not have sentenced him at the high end of the sentencing range had it calculated Galvan–Guajardo's crimi-

nal history score at 19 rather than 26. He maintains that remand is required unless the Government can persuade us that the district court would have imposed the identical sentence if it had correctly applied the guideline. Galvan–Guajardo cites our decision in *United States v. Parrott,* 148 F.3d 629 (6th Cir.1998) in support of this proposition.

In *Parrott,* we explained that where the district court incorrectly interprets a guideline, we must vacate sentence and remand unless we are convinced that the district court would have imposed the same sentence but for the erroneous application of the guideline. *Parrott,* 148 F.3d at 635. In that case, the district court had applied a two-level enhancement for obstruction of justice without requiring the Government to prove by a preponderance of the evidence that the defendant did so with intent. *Id.* The district court had made no finding of fact on the intent issue and appeared to apply the enhancement on the basis of circumstantial evidence in the record. *Id.* We held that the guideline required the court to make findings of fact on the issue and the failure to do so was not harmless. *Id.*

This is a different case. Had the district court in *Parrott* made the required factual inquiry, it may have concluded that the two-level enhancement did not apply. If the two-level enhancement did not apply, that would have *actually* resulted in a reduction of the defendant's sentence. In this case, however, a reduction in Galvan–Guajardo's criminal history score from 26 to 19 does not change the proper guideline range because either score ultimately falls in category VI. In *Williams v. United States,* 503 U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992), relied upon in *Parrott,* the Supreme Court stated that "a sentence is imposed 'as a result of' a misapplication of the Guidelines when the er-

ror results in the district court selecting a sentence *from the wrong guideline range"* (emphasis added). The notion that a lower criminal history score within category VI may have moved the district court to sentence him to a lesser sentence within the range is purely speculative; the district court is presumed to know that the 15–year rule applies to the determination of the Guidelines range, and not to the court's exercise of discretion to sentence within the range. The lack of any indication that an adjustment in Galvan–Guajardo's criminal history score would have any effect on the determination of the proper guideline range, warrants affirmance in this case.

■ Moreover, even assuming that the district court's interpretation of § 1326(a) affected its sentencing decision such that appellate review would be permitted, we are persuaded by the government's argument. U.S.S.G. § 4A1.2(e)(1) (2001) states in relevant part: "Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted." Commentary Note 8 to this provision explains that "the term 'commencement of the instant offense' includes any relevant conduct." U.S.S.G. § 4A1.2(e)(1) cmt. n. 8 (2001). In turn, the Guidelines define "relevant conduct" as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3 (2001).

Entering the United States is relevant conduct to the crime of "being found in" the United States. Accordingly, for purposes of U.S.S.G. § 4A1.2(e)(1), the crime

of "being found in" the United States without proper authorization may commence when the deported alien is present in the United States.

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**