NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0595n.06

Nos. 17-3604/3612

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Nov 28, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| ISAAC R. KNIGHT and DELORES L. KNIGHT, | ) | NORTHERN DISTRICT OF |
| Defendants-Appellants. | ) | OHIO |
| | ) | |

Before: COLE, Chief Judge; GRIFFIN and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Delores and Isaac Knight, mother and son, were convicted of healthcare fraud and conspiracy to commit the same. They each challenge the sufficiency of the evidence supporting their convictions. Delores also challenges the district court's denial of her motion to sever her trial from Isaac's, and Isaac challenges his sentence. We affirm both defendants' convictions, but vacate Isaac's sentence because the district court made a mistake of fact when it applied a Guidelines enhancement for obstruction of justice.

I.

For about ten years, Delores Knight headed Just Like Familee (Familee), a business that provided home-healthcare services in Ohio. Delores's daughter, Theresa Adams, co-owned the business and directed sales and marketing. Delores's son, Isaac Knight, managed a branch office in Mentor, Ohio.

From 2007 to 2014, Familee engaged in healthcare fraud. Among other things, the company falsely certified compliance with Medicare, Medicaid, and Veterans Affairs rules, billed multiple agencies for the same service, and billed for services not provided (including for patients who were already deceased). Eventually, the government's auditors caught on. Various reviews showed that 70 to 100 percent of Familee's claims were improper—if not fraudulent. Medicare, Medicaid, and Veterans Affairs then barred the company from billing for any more services. In response, Delores, Theresa, and Isaac started a new company, Elegance Home Health, and Isaac applied for accreditation to begin billing Medicare again.

Soon thereafter, a grand jury indicted Delores and Isaac (among others) for healthcare fraud, conspiracy to commit healthcare fraud, and money laundering, in violation of 18 U.S.C. §§ 1347, 1349, 1957. The grand jury also indicted Isaac for making a false statement on Elegance's application for Medicare accreditation, in violation of 18 U.S.C. § 1035, on the theory that Isaac falsely marked the "No" checkbox in response to the question whether Medicare had ever taken an adverse action against the applicant. Before trial, Delores moved to sever her trial from Isaac's. The district court denied the motion.

The district court thereafter conducted an eleven-day joint trial. The jury convicted Delores on all counts, and convicted Isaac on all counts except the one that he had made a false statement on Elegance's application. The district court sentenced Delores to 120 months' imprisonment and Isaac to 87 months, and also ordered both defendants, jointly and severally, to pay restitution in the amount of $8,168,107.24. These appeals followed.

II.

A.

Delores and Isaac challenge the sufficiency of the evidence supporting their convictions for healthcare fraud and conspiracy to commit the same. When reviewing a guilty verdict, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

No one disputes that the government proved fraud. Indeed, Delores admits that "[t]here is no question" that Familee "engaged in numerous criminal activities." She and Isaac argue only that the prosecution lacked sufficient evidence that they personally were involved in the frauds.

The government had ample evidence of Delores's involvement. Familee's nursing director testified that Delores had asked her to make false statements on medical forms. The company's billing clerk testified that Delores had told her to lie on forms, and that Delores—who supervised the medical records department—had known that the billed services were improperly documented. A vendor who sold billing software to Familee testified that Delores had asked how to disable the software's double-billing safeguards. Several Familee employees testified that nothing "happened at Just Like Familee" that Delores "didn't oversee or have a role in." This evidence allowed the jury reasonably to conclude that Delores had committed fraud and conspired to do so. That conclusion likewise disposes of Delores's challenge to the evidence supporting her money-laundering conviction, because (as she admits) that argument is derivative of her challenge to her fraud convictions.

The government's case against Isaac was similar. The company's nursing director testified that Isaac had told her to certify phony visits to patients, and that Isaac had been copied on other

emails requesting fraudulent signatures and forged notes. A receptionist also testified that Isaac had told her to ask various nurses fraudulently to sign forms, and that when those nurses had refused, Isaac had told her to fax the unsigned forms to the nursing director for signature. Documents also showed that Isaac had been involved in founding Elegance Home Health shortly after Familee was barred from billing the agencies—which strengthened the inference that he was in on the scheme. This evidence was enough for the jury to find that Isaac committed healthcare fraud and conspired to do the same.

Isaac argues that the jury's finding that he committed healthcare fraud conflicts with its acquittal of him on the charge that he made false statements in Elegance's application. But an inconsistent verdict does not by itself warrant a retrial. *See United States v. Lawrence*, 555 F.3d 254, 262 (6th Cir. 2009). And in any event the jury's findings were not inconsistent: if Isaac did not lie on Elegance's application, he still could have been a participant in Familee's fraud. As indeed the evidence showed he was. His argument is meritless.

B.

Delores argues that the district court should have granted her motion to sever her trial from Isaac's because, she says, evidence of Isaac's fraud unduly prejudiced her case. We review the district court's denial for an abuse of discretion. *United States v. Cody*, 498 F.3d 582, 586 (6th Cir. 2007). As relevant here, Delores must make a "strong showing of prejudice" and show that joinder prevented the jury from "making a reliable judgment about guilt or innocence." *United States v. Hang Le-Thy Tran*, 433 F.3d 472, 478 (6th Cir. 2006).

The joinder had no such effect here. Co-conspirators are routinely tried jointly, and Delores does not explain why this joinder was prejudicial to her. Moreover, the district court properly instructed the jury to consider separately the evidence regarding each count and each

defendant. And the jury acquitted Isaac on one count, which suggests that the jury was "able to compartmentalize and distinguish the evidence concerning the different offenses charged." *See Cody*, 498 F.3d at 588 (internal quotation marks omitted). Delores's challenge is meritless.

C.

Isaac argues that the district court erred in imposing a two-level obstruction-of-justice enhancement to his sentence. *See* U.S.S.G. § 3C1.1. We review the district court's factual findings for clear error and its application of the enhancement de novo. *See United States v. Baggett*, 342 F.3d 536, 540-41 (6th Cir. 2003).

Section 3C1.1 provides for a two-level enhancement when the government proves by a preponderance of the evidence that a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice." U.S.S.G. § 3C1.1; *see United States v. Dunham*, 295 F.3d 605, 609 (6th Cir. 2002). The notes to § 3C1.1 list "committing, suborning, or attempting to suborn perjury" as examples of obstructing justice. U.S.S.G. § 3C1.1 cmt. n. 4(b). If the district court applies the enhancement on the ground that the defendant solicited perjury, the court must make a specific factual finding to that effect. *See United States v. Lawrence*, 308 F.3d 623, 632 (6th Cir. 2002).

Here, the district court found that Isaac had solicited false testimony from his girlfriend, to the effect that he had been in Kentucky when a fraudulent fax was sent from his Ohio office. But the government and Isaac now agree that Delores, not the girlfriend, gave that testimony. The court's stated basis for the enhancement was therefore clearly erroneous.

The government argues nonetheless that application of the enhancement was proper because Delores gave the false testimony in response to questions from Isaac's counsel. Whether those facts provide an alternative basis for the enhancement, however, is for the district court to

decide in the first instance. *See United States v. Parrott*, 148 F.3d 629, 635-36 (6th Cir. 1998). We therefore vacate Isaac's sentence.

D.

Finally, Isaac argues that the court attributed the wrong amount of financial loss to him when it calculated his Guidelines range. We review the district court's loss calculation for clear error, but review its methodology de novo. *See United States v. Meda*, 812 F.3d 502, 519 (6th Cir. 2015).

The Guidelines increase a defendant's offense level in proportion to the loss caused by the defendant's fraud. *See* U.S.S.G. § 2B1.1(b). To calculate the loss, the court "need only make a reasonable estimate" of the loss, but must deduct the fair market value of any services rendered to the victim before the fraud was detected. § 2B1.1 cmt. n. 3(C), (E).

Here, the district court calculated the government's loss by relying on auditors' estimates of the percentage of Familee's claims that had been fraudulent. Isaac does not challenge this method; instead, he argues that the court should have reduced the loss by the value of any services that Familee actually rendered to patients. But Isaac presented no evidence regarding the value of services that Familee actually provided. For that reason, among others, his argument fails. *See United States v. Washington*, 715 F.3d 975, 984-85 (6th Cir. 2013). For the same reason, we also reject Isaac's challenge to the amount of restitution ordered by the district court.

*   *   *

Delores's conviction and sentence are affirmed. Isaac's conviction is affirmed, but his sentence is vacated and his case is remanded for resentencing.